E-FILED
Wednesday, 02 December, 2020  03:18:06 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

|  |  |  |
|---|---|---|
| NATHANIEL MCNEIL JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.      20-CV- |
| vs. | ) | |
| | ) | |
| COLLINS ROOFING, INC., | ) | **Plaintiff demands trial by jury.** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT AND JURY DEMAND

### PRELIMINARY STATEMENT

1.      This is an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e *et seq.,*  and the Illinois Human Rights Act, 775 ILCS 5 *et seq,.* for unlawful discrimination

based on race. Defendant, Collins Roofing, Inc. ("Collins Roofing") engaged in racial

discrimination against Plaintiff Nathaniel McNeil ("Mr. McNeil"), by subjecting him to racial

harassment and by creating and maintaining a hostile work environment because of his race, which

is Black.   Mr. McNeil was also passed up for promotion, improperly disciplined, and

constructively discharged due to his race.

### JURISDICTION AND VENUE

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

Supplemental jurisdiction of Plaintiff's claim under the Illinois Human Rights Act is invoked

under 28 U.S.C. §1367.  This action is authorized and instituted pursuant to Section 703(a) of Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a), and pursuant to Section

102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3.      Venue is proper under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims occurred within this judicial district.  Most of the work Mr. McNeil performed for Defendant was in McLean County.

## PARTIES

4.      Plaintiff, Nathaniel McNeil Jr., is a forty-two-year-old Black man and resident of Tazewell County, Illinois.

5.      At all relevant times, Mr. McNeil was an employee of the defendant within the meaning of 42 U.S.C. § 2000e.

6.      At all relevant times Collins Roofing has been an Illinois corporation and has had at least fifteen (15) employees.  At all relevant times it has been an employer within the meaning of 42 U.S.C. § 2000e.

7.      Collins Roofing, Inc. engages in roofing, siding, gutters, and other services for residential homes in central Illinois. It maintains an office in Atlanta, Illinois.

8.      The President and owner of Collins Roofing, Inc. is Josh Collins (hereinafter "Owner").

## ADMINISTRATIVE PROCEDURES

9.      In June 2018, Mr. McNeil's charge of employment discrimination on the basis of race was accepted by the Equal Employment Opportunity Commission (hereinafter "EEOC") within 180 days of the unlawful employment practice alleged herein.

10.      On September 15, 2020, a Notification of Right to Sue was issued by the EEOC. *See* Exhibit A.   Plaintiff has instituted this lawsuit within ninety (90) days of the Right to Sue notification.

11.      All conditions precedent to this action have occurred or been performed.

## STATEMENT OF FACTS

12.     On May 16, 2016, Collins Roofing hired Mr. McNeil full-time as a laborer to perform roofing work.

13.     The pay rate was ten dollars ($10.00) per hour.

14.     As part of the employment, Defendant issued to Mr. McNeil a uniform consisting of a black sweatshirt.

15.     Upon information and belief, Mr. McNeil was the only Black employee at the date of his hire.

16.     Previous to this job, Mr. McNeil had over ten (10) years of experience working for roofing companies.

17.     Mr. McNeil's direct supervisor was the foreman, Kyle Messenger (hereinafter "foreman"), who is White.

18.     On or around the same day that Mr. McNeil was hired, Trevor Messenger, a White relative of the foreman, was also hired as a full time laborer to perform roofing work.

19.     Upon information and believe, Trevor Messenger had no experience prior to this job position, but was hired at the same rate as Mr. McNeil of ten dollars ($10.00) per hour.

20.     From Mr. McNeil's first day of working for Collins Roofing, his White co-workers, including the foreman, frequently used the term "Nigger" or "Nigga" (hereinafter "N-word") in demeaning contexts in his presence.

21.     Mr. McNeil repeatedly informed his co-workers, including the foreman, that the N-word is an offensive term and asked that that they stop using it.

22.     Trevor Messenger told Mr. McNeil he had a "right" to say the N-word.

23.     The co-workers, including Trevor Messenger and the foreman, continued on a daily basis to use the N-word in Mr. McNeil's presence and, at times, used it directly at Mr. McNeil.

24.     A few months after Mr. McNeil started working for Collins Roofing, Mr. McNeil told the Owner about the use of the N-word.

25.     Mr. McNeil told the Owner over ten (10) times that the N-word is used in the work place.

26.     Oftentimes, these conversations took place between Mr. McNeil and the Owner as Mr. McNeil helped the Owner clean up the warehouse.

27.     Each time, the Owner stated something to the effect of "I'll take care of it."

28.     The Owner took no apparent action in response to Mr. McNeil's request to stop the use of the N-word in the work place.

29.     Around June 2016, Mr. McNeil reported to the foreman that he could not tolerate the use of the N-word at the work place any longer. In response, the foreman told him "then go home."

30.     When Mr. McNeil called Josh Collins about this incident, Josh Collins also told Mr. McNeil to go home.

31.     As a result of this incident, Mr. McNeil lost the remainder of his wages for the day.

32.     Around July 2016, Trevor Messenger–who was hired the same day as Mr. McNeil, who had less experience and less qualified than Mr. McNeil, and who continued to use the N-word at the workplace– was promoted from laborer to shingler and given a raise.

33.     Mr. McNeil was not promoted to shingler and was not given a raise at this time.

34.     On or around April 15, 2017, an argument occurred between two (2) workers. Mr. McNeil stepped into the conversation to try to mediate. Mr. McNeil was directly called the N-word three (3) times by one of his co-workers named Jeremiah.

35.     On or around April 15, 2017, Mr. McNeil told the Owner of the company about the incident, that the co-worker called Mr. McNeil the N-word multiple times, and this was continuing to be a problem to the point that Mr. McNeil was worried that it would escalate into something more serious.  The Owner said something to the effect of "I'll take care of it."

36.     The Owner did not take any corrective action against the individual who called Mr. McNeil the N-word.

37.     On or around April 16, 2017, the foreman told Mr. McNeil to apologize to and shake hands with Jeremiah for the incident or Mr. McNeil would be fired.

38.     On or around June 14, 2017, Mr. McNeil spoke with the foreman about a raise.

39.     The foreman told Mr. McNeil on multiple subsequent occasions that Mr. McNeil would soon receive a raise.

40.     On or around July 17, 2017, Mr. McNeil spoke with the Owner about a raise. The Owner told Mr. McNeil that the foreman had never informed the Owner that Mr. McNeil wanted a raise.

41.     During that same July 17, 2017 conversation, Mr. McNeil notified the Owner that several employees continued to use the N-word.

42.     The Owner said something to the effect of "I'll take care of it," but no apparent actions were taken regarding the use of the N-word by co-workers and the foreman and the use of the N-word by those coworkers did not stop.

5

43.     On Friday, April 13, 2018, Mr. McNeil received a ride to a worksite of Collins Roofing.  Employees did not typically wear their company uniforms while doing their actual work on roofs, so Mr. McNeil left his clean company uniform on a co-worker's truck before he began work at the site.  Mr. McNeil's co-workers observed him leaving his uniform on the co-worker's truck.

44.     At the end of the workday, Mr. McNeil found his uniform on the ground, picked it up, tucked it under his arm, and went home.

45.     When Mr. McNeil arrived home, he and his partner discovered that someone had written "KKK" on his uniform in spray paint. *See* Exhibit B.

46.     Mr. McNeil's partner, Jessica Lloyd, immediately called the Owner of Collins Roofing to notify him about the incident, because Mr. McNeil was too distressed about the incident to call himself.

47.     After being notified, the Owner did not communicate about any corrective action he would take.

48.     On or around Saturday, April 14, 2018, Mr. McNeil called the Owner. The Owner yelled and cursed at Mr. McNeil for calling him.

49.     On or around Sunday, April 15, 2018, the Owner called Mr. McNeil. During this call, Mr. McNeil told the Owner that he did not feel safe working until actions were taken to ensure his safety.

50.     The Owner said he would "take care of it," that he would set up a meeting with Mr. McNeil and the foreman to discuss further actions, and would get back to Mr. McNeil with next steps.

51.     The Owner did not communicate anything further to Mr. McNeil on what he would do to ensure Mr. McNeil's safety.

52.     After April 15, 2018, Mr. McNeil called and left several voice messages and several text messages for the Owner, but the Owner did not respond.

53.     Between April 17, 2018 and May 7, 2018, Mr. McNeil did not hear back from the Owner.

54.     The incident of "KKK"  spray painted on his work uniform, along with the regular use of the N-word, frightened Mr. McNeil and he was afraid for his life as working on a roof is inherently dangerous and he needed to be able to rely on his co-workers for his safety.

55.     On May 7, 2018, Mr. McNeil received notice from Collins Roofing that he had "left the position" and that his employment was terminated.

## STATEMENT OF CLAIMS

56.     As alleged in paragraphs 1-55 above, Collins Roofing engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a). These unlawful practices include, but are not limited to, the following:

        a.     Collins Roofing engaged in race discrimination against Mr. McNeil  by subjecting him to a hostile work environment based on his race, including, but not limited to, frequent use over a prolonged period of time of an egregious racial epithet by both the foreman, who was his supervisor, and other coworkers.  Mr. McNeil was also subjected to the intimidating and threatening spray painting of "KKK" on his work uniform, placing him in fear for his safety.

        b.     Mr. McNeil was either discharged or constructively discharged after the "KKK" incident on April 15, 2018,  because he was afraid to go to work due to the egregious racial harassment and hostile work environment and the Owner had not told him of any corrective action

the company would take to ensure his safety. Collins Roofing terminated Mr. McNeil's employment without notifying Mr. McNeil of any action it would take to protect him.

        c.     Collins Roofing took adverse action against Mr. McNeil, including but not limited to (1) passing him over for promotion in favor of a less experienced White co-worker who used racial epithets in Mr. McNeil's presence, and (2) directing Mr. McNeil to leave the work site when he complained that another co-worker used racial epithets against him.

57.     Collins Roofing conduct, as described in paragraph 56, also constitutes unlawful discrimination based on race in violation of the Illinois Human Rights Act, 775 ILCS 5/2-102(A) and 775 ILCS 5/2-101(E).

58.     The racial harassment and hostile work environment to which Mr. McNeil was subjected was perpetrated, in part, by his direct supervisor. The hostile work environment ultimately culminated in Mr. McNeil's discharge/ constructive discharge.

59.     Collins Roofing knew or should have known of the racially hostile work environment because its foreman observed it and participated in it and because Mr. McNeil informed the Owner about it on multiple occasions.

60.     Collins Roofing failed to take prompt or effective action to prevent, correct, or remedy the racially hostile work environment.

61.     The effect of the practices complained of in paragraphs 56 and 57 above has been to deprive Mr. McNeil of equal employment opportunities and otherwise adversely affect his status as an employee because of his race.

62.     As a proximate result of Collins Roofing's unlawful employment practices complained of in paragraphs 56 and 57, Mr. McNeil suffered substantial pecuniary and non-pecuniary damages. The pecuniary damages suffered include loss of wages and benefits. The

non-pecuniary damages suffered include emotional pain, suffering, humiliation, inconvenience, loss of enjoyment of life, loss of self-esteem, loss of civil rights, and mental anguish.

63.     The unlawful employment practices complained of in paragraphs 56 and 57 above were intentional.

64.     The unlawful employment practices complained of in paragraphs 56 and 57 above were done with malice or with reckless indifference to Mr. McNeil's federally protected rights and his rights under the Illinois Human Rights Act.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Collins Roofing, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from maintaining a racially hostile work environment.

B.     Order Collins Roofing to institute and carry out policies, practices, and programs which provide equal employment opportunities for Black employees and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Collins Roofing to reinstate Mr. McNeil.

D.     Order Collins Roofing to make whole Mr. McNeil by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, front pay in lieu of reinstatement.

E.     Order Collins Roofing to make whole Mr. McNeil by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described

above, including, but not limited to, job search expenses and medical expenses, in amounts to be determined at trial.

      F.      Order Collins Roofing to make whole Mr. McNeil by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

      G.      Order Collins Roofing to pay Mr. McNeil punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

      H.      Award Mr. McNeil the costs and reasonable attorney's fees for this action.

      I.      Grant such further relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Mr. McNeil requests a jury trial on all questions of fact raised by his complaint.

Dated: 12/02/2020                              Respectfully submitted,



Digitally signed by Britta J Johnson
DN: cn=Britta J Johnson, o=Prairie
State Legal Services, Peoria Branch,
ou, email=bjohnson@pslegal.org,
c=US
Date: 2020.12.02 11:12:27 -06'00'

_____

Britta Johnson
Attorney for Plaintiff
Prairie State Legal Services, Inc.
411 Hamilton Blvd, Suite 1812
Peoria, IL 61602
Phone: (309) 621-4007
Facsimile: (309) 674-3802
bjohnson@pslegal.org

/s/ Sarah Megan
Sarah Megan
Attorney for Plaintiff
Prairie State Legal Services, Inc.
31W001 E. North Avenue, Suite 200
West Chicago, IL 60185
Phone: (630) 797-3517
Facsimile: (630) 690-2279
smegan@pslegal.org

11